We will hear argument this morning in Case 23-7809 Gutierrez v. Saenz. Ms. Fisher. Mr. Chief Justice, and may it please the Court, this Court recently held that Texas prisoner Rodney Reed has standing to challenge certain procedures contained in the Texas Post-Conviction Statute, known as Chapter 64, because the declaratory judgment that those procedures were unconstitutional would redress Mr. Reed's injury by eliminating the prosecutor's reliance on those same procedures as a reason to deny testing. This Court should hold that Mr. Gutierrez has standing for the same reason. The injury here is redressable because the declaratory judgment that finds certain procedures in Chapter 64 unconstitutional eliminates those statutory procedures as a lawful reason for respondents to forbid testing. But even if this Court should apply a more searching inquiry, Mr. Gutierrez would still have standing. It is important to remember that the declaratory judgment at issue here does more than simply focus on the availability of DNA testing to show death ineligibility. It recognizes the inherent conflict between the Chapter 64 statute and the habeas death ineligibility statute, and it requires that the procedures for obtaining DNA testing do not obstruct the right that Texas has given prisoners to seek habeas relief based on newly developed evidence. The CCA has never considered what procedures in Chapter 64 are necessary to cure the constitutional infirmity found by the District Court. Nor has it ever determined whether Mr. Gutierrez would be able to access DNA evidence under a constitutional version of the statute. None of the reasons given by respondents for denying access to the evidence are independent of the due process violation found by the District Court. They are part and parcel of decisions by the CCA made under an unconstitutional version of the statute, applying procedures found to be inadequate to vindicate the right at the heart of the declaratory judgment. The District Court's declaratory judgment would eliminate all the reasons respondents rely on to deny testing and redress Mr. Gutierrez's injury. I welcome your questions. Didn't the CCA consider the testing after the declaratory judgment? No, Your Honor. By the time Mr. Gutierrez brought his case to the CCA, the Fifth Circuit had already taken away the declaratory judgment, a point the CCA was very clear to make in their opinion. So the binding effect of that declaratory judgment wasn't present, and the CCA did not apply it. So the CCA has actually never decided this case with the declaratory judgment in hand. So what else would you have to do if the declaratory judgment is reinstated? What else would you have to do at the CCA level? If the Fifth Circuit were to uphold the declaratory judgment, we would first go to respondents and see if they would turn over the DNA under a constitutional version of the statute. If not, we would file another Chapter 64 motion, which would have the binding res juda a cata effect by binding the parties to the constitutional version of the declaratory judgment, which requires adequate procedures to vindicate the right in the habeas statute, and we would ask the CCA to apply that res juda cata effect, and we would ask for testing. But short of a court order with the district attorney, the prosecutor, isn't that discretionary? Without a court order, it is discretionary, Your Honor. But as this court decided in Reed, the district attorney simply averring that they won't turn over DNA evidence isn't enough to defeat standing. The district attorney in Reed also made that argument, and this court rejected that argument. Can I get us back to the question presented? Yes, Your Honor. It was, does Article III standing require a particular, I'm reading the question presented, particularized determination of whether a specific state official will redress the plaintiff's injury by following a favorable declaratory judgment. So I thought this case was only about standing, because the court before didn't get to the due process arguments, did it? I completely agree this case is here about standing, and our answer to the question presented would be that you don't need to look to whether a particular district attorney would grant relief. Instead, you need likelihood of success that they might, and we assume that an official whose reasons are declared unconstitutional wouldn't rely on them, correct? That's correct, Your Honor. All right. So, really, I thought this case was simply about, was Texas right in dismissing it for lack of standing? By Texas, I'm sorry, was the court below right by dismissing this because of lack of standing? Yes, Your Honor. The Fifth Circuit was not correct to dismiss this for lack of standing, because they basically applied a new standard, a new test. Reed simply applied the Lujan test, the same test that was in Utah versus Evans. We don't believe that the standing determination in Reed was designed to create some sort of new test. But the Fifth Circuit sought that way, and as they said in their footnote, they chose to go beyond what this court did in Reed and look at the state record. I'm sorry, the defendant in this case is the district attorney, right? That's correct, Your Honor. And so, would you agree that you have to show that what you seek, obtaining access to evidence for DNA testing, would be redressed by a declaratory judgment that applies to the district attorney? We would have to... It has to be redressed through the district attorney? Yes, Your Honor. However, the district attorney isn't bound by a declaratory judgment. What they would be bound by is the res judicata effect of the declaratory judgment on the parties, should the district attorney choose not to give the DNA. We could then go back to state court and we'd have the declaratory judgment in hand, and the state court would be bound by the determination. Well, let me ask it this way. Do you think the standing argument is different because you saw the declaratory judgment as opposed to an injunction? Well, we were not able to seek an injunction. We tried to seek an injunction in this case, and we lost. But we seek a declaratory judgment just like Rodney Reed sought a declaratory judgment. Would there be standing if you sought an injunction? There would be. You would have to show that you could vindicate what you seek by means of an order directed to the defendant, that is, the attorney general. Yes, we would have standing if we sought an injunction. If the court had power to order the district attorney to turn over the evidence, we would have standing to seek that. And you asked for that, didn't you? I mean, if I read paragraph 97 of your complaint, that asks, among other things, for an injunction to the district attorney. Is that correct? That's correct, Your Honor. And is there still a possibility of getting that or not? No, Your Honor. Because? Well, we lost that. We weren't granted relief on that claim, and we did not appeal that claim, and so we're not seeking relief on that claim through an appellate process. Some of the awkwardness, I suppose, of the procedure here stems really from Osborne and Skinner itself in that it recognized the 1983 right in a context where arguably habeas, that certainly the dissenters pointed that out. But we are where we are on that, and that seems to me to undergird some of the awkwardness here. I couldn't agree more, Your Honor. I think it is a bit of an awkward construct to sue the district attorney when it's discretionary based on a declaratory judgment, but that's what Osborne and Skinner and now Reed have said that you do. And the idea, I believe, is that the declaratory judgment, while it wouldn't bind or it wouldn't force the district attorney to turn over the evidence, it would be a legal ruling from a federal court that the procedures in question were unconstitutional, and we believe that the district attorney, if they were ordered by the court to turn it over, would, of course, turn it over in the state court, or that they wouldn't rely on an unconstitutional statute. Now, when you get back to state court, say you won the Fifth Circuit, said it's a procedural due process problem, you get back to state court, it's not turned over by the prosecutor. The state court would presumably go through the Chapter 64 proceeding and figure out, okay, does this, is he entitled to the testing, or would it be, in essence, harmless error even if he were entitled to the testing, which is akin to what they've done already, I guess. Well, our position, Your Honor, is that the CCA has never actually decided whether Mr. Gutierrez should get testing under a constitutional version of the statute. You are correct. We would go back to state court. We would file another Chapter 64 motion with a constitutional, asking for the court to apply the constitutional determination made by the federal district court. And by constitutional, just so I'm clear, you mean a system where you can bring a Chapter 64 not just to show you're innocent of the underlying crime, but that you're ineligible for the death penalty. That's where the procedural due process issue is? It's that plus more, though, because it's not simply sort of slapping on death eligibility to the current Chapter 64 statute, because the current Chapter 64 statute is designed to figure out who should get DNA testing to determine who's actually innocent of the crime. So all of the procedures that are baked into Chapter 64, by necessity, it's logical, I'm sure Texas has reasons for doing this, are designed to decide who should get DNA testing to show they're actually innocent. Ms. Fisher, I'd just like to follow up on that, because in the June order from the TCCA, looking at Joint Appendix 478 and 479, I'm sure you're familiar with it, they say even if Chapter 64 does apply to the question of death eligibility, that your client still wouldn't receive relief because effectively, as Justice Kavanaugh pointed out, it's harmless error here. And what do we do about that? They seem to have anticipated this very issue because it was before the district court, though you're right, the circuit came out the other way. But this issue's been lingering in the case for a long time, and the TCCA has said now I think twice that whether 64 applies to the death penalty stage or not, your client would not be eligible for relief. Thoughts? Yes, Your Honor. The provision that when the CCA made that ruling, they weren't considering the due process violation found by the district court, which again goes beyond simply asking does Chapter 64 in its current iteration allow for death ineligibility. What the due process violation found by the district court addresses are the procedures within Chapter 64 and whether or not they're adequate to vindicate the right. Well, I'm sorry to interrupt you there, but the TCCA said given the evidence presented, the statute did not operate unconstitutionally as to appellant because harmless error effectively. I'm summarizing, but that's the gist of it. Are you saying your due process claim would preclude a court from applying a harmless error test? No, Your Honor. What I am saying is that that determination by the Texas CCA was not saying that the procedures in Chapter 64 are inadequate and we need to look at what will make them adequate. By limiting their determination to the record evidence, and you'll see, I'm sure you've seen, they simply sort of cut and paste and recite the two sentences, the even if determination back in 2011. But they previously said, yeah. Right. That determination does not actually consider how to make Chapter 64 a test that will vindicate the right in a way that is an illusory. I guess I'm struggling to understand what you would have them do besides say 64 applies to the death penalty stage. What's your due process complaint besides that? They would have to consider a broader scope of evidence. The key words in that even if holding that they had or what Your Honor cited is when they say they limit it to the trial evidence or the record evidence. That limitation is a limitation that was designed with the procedures in Chapter 64 that we're supposed to figure out who's going to get DNA to show they're actually innocent. And that's because if you add DNA to the mix of trial evidence, you can pretty easily figure out if DNA is going to show someone is actually innocent. Well, but that's added to this and you're sort of figuring out how much is the weight of the evidence. How much would it take, like the tiny thimble full of additional evidence? I mean, how is a court supposed to figure that out? Well, a petitioner could go before a federal court and argue a due process claim because they had just a little bit of new evidence. But I would suspect that that petitioner would be turned down because of a 12B6 ruling. So it would still have to be meaningful evidence. No court has considered this evidence and it really is the scope of evidence that's critical here because those prior decisions by the CCA didn't look at the right that was being squelched in the habeas petition. When you're bringing the new claim, you're going to argue, I gather and have argued, that there's more than just DNA since the trial. That's exactly it. To file a claim that a petitioner is death ineligible... Can you explain what that is? I'd be interested in you listing what that is. Yes. So what Mr. Gutierrez would need to present in his claim to show that he's death ineligible would be two different types of new evidence. It would need the DNA because he'd have to show that he wasn't actually in the home and that he didn't actually kill the decedent. But he'd also have to show evidence to show that he wasn't a major participant of the crime. This is the Edmund Tyson liability. That evidence is not going to be in the form of record evidence or DNA. That's going to be newly developed evidence like we have found, which would include things like, and this is not an exhaustive list, but it would include things like a statement from the primary suspect of El Cuellar's nephew that Mr. Cuellar, whom everyone in the trailer park believed had killed her when this happened, had actually approached him about committing this very crime two weeks before the crime, and that after the crime he had hundreds of thousands of dollars buried in the trailer park near his home and there were hundreds of thousands of dollars that were not accounted for after this crime occurred. They would have to do with a lie detector test that wasn't discovered by trial counsel, all things that would go to his role because Mr. Gutierrez was tried under the law of parties. What does that have to do with the question whether the limitation in the Texas statute to evidence that shows innocence as opposed to death ineligibility is constitutional? That's a separate question, isn't it? Are you arguing that it's a violation of his constitutional rights for Texas to say that in this context, for the Texas courts to say in this context we are only considering evidence that's already in the record? No, Your Honor, we wouldn't argue it separately because it's part of the procedures that make the right to file the habeas illusory. And if I may explain, the limitation is designed to limit the access to evidence to people who could show they're actually innocent who weren't also a party to the crime. The law of parties actually really is critical here because the reason Mr. Gutierrez was told by the CCA that he couldn't access evidence to show that he didn't actually kill the decedent or, excuse me, wasn't in the house was because there was enough record evidence to show he was still a party to the crime. And so it didn't really matter if he was the person who killed the decedent or was in the home. There was enough evidence to show he was a party. And if he was a party, then DNA evidence wouldn't exonerate him. Well, I understand all that, but when you talk about this other evidence, you're raising all sorts of other issues. Is it newly discovered evidence? Could you have had access to this evidence at the time of trial? Does it meet all of the other requirements of newly discovered evidence? To what extent, if any, is any of that constitutionally required? That doesn't seem to have anything to do with the question whether this differentiation under Texas law between evidence that shows lack of guilt and evidence that shows death ineligibility is constitutional. Justice Alito, adding DNA evidence simply to the record evidence will almost never show that someone's not a major participant of the crime, which is what someone needs to show to show that they're death ineligible. It's that other part of the evidence that I was addressing with Justice Kavanaugh. And so because the 5A3 section, the habeas section on death ineligibility, is a section designed to show death ineligibility based on newly developed evidence, when the Chapter 64 test for who should get evidence doesn't consider that same scope of evidence, the right to file the subsequent habeas petition remains illusory. Ms. Fisher, can I bring you back to standing? So you sued the DA. I just want to make sure that I understand exactly what you want out of this. Is it your position that the DA, even of the decision whether to give DNA evidence is discretionary when made on the part of the DA, is it your position that a declaratory judgment would influence that judgment because the DA takes Article 64 into account in making that decision, even if it doesn't bind him, that he would take it into account and it would be a factor? And so if it were unconstitutional, it would be taken out of the bundle of factors that might influence the DA's discretionary decision. Is that your position? If I'm understanding Your Honor correctly, yes, in the sense that it's not that it would influence them, but that the reasons they have cited are tied in to the unconstitutional. They have cited, the DA has cited? But you sued the DA. This can't be about the Texas courts. The reasons the respondents have cited in their merits brief for not turning over the evidence are not simple recalcitrance. They didn't simply say, well, we really just don't want to turn over the DNA. They cited reasons that were found within the statute, and if those reasons, those statutory reasons, were found to be unconstitutional, we believe that the District Attorney's Office wouldn't rely on them. So it would be the equivalent. You thought an injunction initially, as you told Justice Kagan, trying to get the DNA evidence. That's off the table. Now, if we imagine this as an injunction, it would be an injunction in joining the DA from taking account of the merits reasons that you say he cites, which really kind of go back to Article 64? Well, it always goes back to Article 64, Your Honor, because of the discretionary nature. But Article 64 is a jurisdictional provision that binds the court. So I'm trying to tie up. You have to have a redressability argument to the DA. And in Reed, I think that's the way to understand Reed, that it was going to the DA's discretionary determination that the DA could not consider, all this is assuming at the pleading stage, right, that the DA, if it was unconstitutional, couldn't take that into account even if it didn't bind him because it was an unconstitutional reason, in the same way, say, race would be an unconstitutional reason. So I'm trying to figure out what you want out of the DA. It's the same thing in Reed. The reasons that they're saying they won't turn over the DNA now are also based on unconstitutional reasons. Article 64? Not in its entirety. The procedures that barricade the right to develop the habeas. Does the DA have to consider Article 64? Could the DA deny evidence for reasons entirely apart from Article 64? I would say no, Your Honor, because the whole purpose of a 1983 is to prevent state actors from acting in ways that violate constitutional rights. And if a provision, if a federal court found that provisions in 1983, I'm sorry, in Chapter 64, were unconstitutional and violated due process, and the district attorney decided to rely on those same unconstitutional. No, no, no, no, no, no. I said not, the question that I asked you was could the DA deny access to the DNA evidence, just putting Article 64 entirely aside, just saying, listen, I don't believe in giving DNA evidence. You can go to the court and try to get it, but it's the policy of this office not to hand it over. Yes, the DA could hear and the DA could in Reed as well. Okay. But would that defeat standing? I mean, I don't understand that to be an argument for you not to be able to press forward in this situation where the DA, you say, has relied on 64. Exactly. If they were to just simply say we're not turning it over, that wouldn't impact our standing in this case. That's the argument that Reed, that the district attorney in Reed made to this court, both an oral argument and briefing. Reed- And it seems to be the argument that is propelling the Fifth Circuit here. In other words, to the extent that there are other bases for the DA to deny this evidence, it's not redressable. That's what I sort of understood to be the core of their analysis, and I'm worried about that.  And, again, that's why 1983 is the right tool for this. Because if they're going to rely on reasons other than Chapter 64, a constitutional version of Chapter 64, to deny evidence, well, then that's basically the argument that the district attorney in Reed brought to this court and this court rejected. The district attorney in Reed briefed and argued that a declaratory judgment will not make it more likely that they will turn it over. They will not- Because there were these other reasons. Yes. And the court said that's not, in this situation- I mean, let me just go back to your initial statement about whether or not you see Reed as setting up a new test or just rearticulating redressability as it has traditionally been understood. I thought that was the case, that Reed was not suggesting that now redressability is evaluated based on a determination of how likely it is that the person will actually get the relief that they are seeking, meaning there are no other bases that would preclude them from getting that relief. Am I right about that? You are right, Your Honor. And the position that we've taken is that Reed doesn't change the test. We believe that it's the Fifth Circuit and respondents who are arguing that Reed somehow created this higher bar and that now you have to do things you didn't have to do before to show standing. But our position is that when you apply Reed as it's written, we fit exactly under that category because it's the Chapter 64 reasons as it was in Reed that are the reasons the district attorney are denying access to the evidence and if they applied a constitutional version of the statute, then they couldn't rely on those same reasons. They would eliminate those reasons. But if I could go back to, I think, the thrust of Justice Barrett's question. I mean, suppose that the DA here said, you know, notwithstanding what anybody says about Chapter 64, we're just not turning this over, you know, and pounds the table ten times so you know that they're serious. Does that defeat your standing? May I answer, Your Honor? Sure. That would not defeat standing because the declaratory judgment would still have the res juda acada fact of binding the party to the determination that the statute was unconstitutional. We could then go to the state court and argue that they would have to respect that declaratory judgment and so we would have a mechanism and the declaratory judgment would be the key to that mechanism because that's what would change, to use the words of Reid, the legal status between the parties. It's the binding effect of the declaratory judgment in state court that could get around their recalcitrance by simply saying, we just don't want to turn it over. If your theory is correct, are you saying that, are you looking for a requirement that the government exercise discretion in light of this evidence or say they don't have any discretion but to grant relief? No, we're not looking for something to force or compel the district attorney to turn it over. The declaratory judgment just doesn't have that power. But that doesn't, that doesn't defeat Article 3 standing and it doesn't... Well, I guess my question, it could though, couldn't it? I mean, if the district attorney said, look, the way I see the case, the way the evidence looks at it, this DNA evidence is not going to have any effect whatever. And if it's not going to have any effect whatever, that's not enough to get standing. Standing may not require much but it requires something. If they were saying that based on, not on Chapter 64 reasons, well, that wouldn't implicate the standing in our lawsuit to declare Chapter 64, certain provisions of Chapter 64 unconstitutional because our 1983 puts Chapter 64 at the center of the unconstitutional actions. Thank you. Justice Thomas? Is Texas required to have constitutionally to have a procedure like Chapter 64? No, Your Honor. There's no substantive right to DNA testing. So if it was completely discretionary, what would your case look like? You mean if Chapter 64 didn't exist? Was completely discretionary with the DA. And if Chapter 64, if the ability to turn over DNA evidence was completely discretionary to the district attorney, we would have to rely on what the district attorney would do. So how is it any different now where the court has said that you have not complied with the requirements, the other requirements of Chapter 64, the CCA? Because the CCA has never considered if we should get testing under a version of the statute that cures the constitutional infirmity found by the district court. So it's a constitutionally infirmity and a procedure that's not constitutionally required. Well, once the state of Texas chooses to give that right, then due process attaches. So what's your objective? What do you ultimately intend to show with the DNA? What we hope to show with the DNA is that if we combine DNA with our other newly developed evidence, that the court will find that we make, that the CCA will find that we make the threshold showing under 5A.3 that Mr. Gutierrez is death ineligible. We may not win that. Because he's death ineligible because? Because he wasn't a major participant in the crime. Because he didn't actually kill, attempt to kill, or anticipate a life would be taken. And he doesn't meet the... So how would it show that? How would the DNA show that? The DNA would be one component. Texas' theory in this case is that Mr. Gutierrez was not inside the house initially and didn't intend for anyone to get hurt. They admitted this in their penalty case. But Mr. Gutierrez said he was in the house. Yes. Well, the DNA would also show that that statement, which he has maintained is not true. It would bolster that argument that he's been making. But if I may, Justice Thomas, and I say this respectfully, we don't have to show that we would ultimately win that lawsuit. That's not required to show that we have standing. Justice Alito? What if it were absolutely clear that a decision that Chapter 64 is unconstitutional in the way the district court found would have no effect? whatsoever on the district attorney? Would you have standing? Would you satisfy redressability? Yes. And again, that's the position the district attorney took in Reed. Because the binding effect... How would it be? How would you satisfy redressability? Because the binding effect of the declaratory judgment would allow us to go back into state court and ask the state court to give effect to the determination of the federal court that Chapter 64 is unconstitutional in the way that the procedures block the ability to develop a subsequent habeas petition. So you think you have standing because a declaratory judgment would do you some good, even though it would have no effect whatsoever on the district attorney who is the defendant in this case. That's your position. Yes, because it would be a tool that we would use in the state proceedings under a new Chapter 64 motion, which is no different than Rodney Reed. What if you had sued the mayor of Brownsville? We're suing the mayor of Brownsville because we think that my client's due process rights were violated by the denial of DNA testing. A declaratory judgment there that that was unconstitutional would give you the same weapon you want here. Well, we would have a traceability problem then, Your Honor, because the mayor wouldn't be involved in denying access to the evidence that we need. So we would fail Article... Sorry, Prong 2 of the standing test in Your Honor's hypothetical. What if the district attorney held a news conference and he swore on a stack of Bibles that a declaratory judgment, that the declaratory judgment that you want would have absolutely no effect on my decision to turn over DNA evidence? Because I agree with the Texas Court of Criminal Appeals that it would not influence the decision on death eligibility. Plus, I also agree with the trial court that all of this was done for purposes of delay. Would you have standing? If that was simply a declaration made by the district attorney, we would, if the statute were to be found unconstitutional, because we would still have a right to take the constitutional version of the statute as declared by the federal court and the rest due to a cod effect that it would bind the parties to that determination to state court. And that's exactly the position that Rodney Reed is in. Let me just take you back briefly to the questions Justice Thomas was asking about the DNA evidence. The most that you could possibly show from this DNA evidence... Let me correct me if I'm wrong, because you know the facts in this case inside out and backwards. I don't. But I gather that what you want to prove with the DNA evidence is that other people were in the home. With the DNA evidence, that's correct. Okay. How would that make your client death ineligible? How would that tend to show that he's death ineligible? Suppose somebody else was. Suppose that you get... It wouldn't be surprising if you found Cuellar's DNA on some of this, right? He found the victim. Anyway, suppose you can prove other people were there. How does that help your client? Because to show that Mr. Gutierrez is death ineligible in a 5A3 subsequent habeas, we have to show two things. We have to show both that he wasn't in the house, and the DNA would help with that. But we also have to show his role as one that was not a major participant. Well, the DNA can't show that he wasn't there. At most, it could show that other people were there. Yes, but that would be one component. And that's exactly why a test in Chapter 64 that limits the evidence to the record evidence isn't looking at the right that's being squelched when in 5A3 you can present both types of evidence. And, again, Your Honor, we wouldn't have to actually show to show that we have redressability in standing that we're going to win the subsequent hearing. No, I understand that, but I'm just wondering, how long has this litigation been going on for? More than 25 years, right? I just am interested in knowing whether it's going anywhere. Although it may feel that way, Your Honor, Mr. Gutierrez filed for his first Chapter 64 motion before his federal habeas in 2011. He has done nothing but utilize the procedures offered to him by the Texas courts. When he filed his second motion in 2019 after current counsel came on, there were substantial factual and legal changes in Chapter 64 that led him to file a second Chapter 64 motion, including the at-fault provision from Chapter 64, which was one of the reasons he wasn't allowed to have testing. That was removed, so the law changed and the facts changed. One of the reasons that he was denied testing is he wanted testing. I understand. Thank you very much. Thank you. Justice Sotomayor? I'm trying to break this case down in my own head, so can I take it a step at a time? Please, Your Honor. There were, I think, scrapings under the fingernails of the victim. Yes. There was a hair that was entwined in her finger or somewhere on her body. Correct. There were other things that suggest that DNA testing might not just show that Mr. Qualar was there, but might show that both Garcia brothers were there, correct? Not only is that correct, the CCA found in 2011 that if the DNA in those highly probative biological materials that were recovered for the very purpose of That they weren't Mr. Gutierrez's. If that I don't want to eat up a lot of time on this, but if the evidence were to show that the other two were present, then that would give some support to your client's claim, or support your client's claim, that he wasn't the one who entered the apartment to do the killing. Yes, Your Honor. All right. So, putting that aside, you answered, I'm not sure what your answer was to Justice Barrett or to Justice Thomas. The Texas Code of Article 6403 permits the court to order forensic testing. So the court could order the DNA, could order the DA to do it, correct? It chose not to here. You asked for injunction. Yes, yes. So you had standing. It is a right given to you under Texas law to go in and ask for an injunction. So you had standing to do that. Yes. Answer my questions, okay? You didn't win, but you didn't win because you continue, I think, to argue two points. One, that you can seek testing for just death eligibility, and the district court said, you're right. You don't have to prove that you were actually innocent of the crime. You just have to prove that you were not eligible or not guilty of the death penalty, correct? No, Your Honor. The unconstitutional version of Chapter 64, under which Mr. Gutierrez filed for DNA testing, only allows it to go to whether or not you're actually innocent. It didn't allow you to test to show that you were death ineligible. That's my point. All right. But there's a second component to your due process that this declaratory judgment, you say, includes. I'm not quite sure how. But that includes, by the way, before I go on to that, Justice Thomas asked you about is there a constitutional right to DNA testing. Osborne and Skinner say that there's a constitutional right if the state elects to give you testing, correct? Exactly. So that was Justice Kavanaugh's first question to you, that once they elect to do it, then you have the right to have a constitutional version of it, correct? That's exactly correct, Your Honor. All right. And you claim it's not constitutional for two reasons. One, as it's been construed or as applied by somebody, okay, that it doesn't permit death eligibility. And two, it doesn't permit new evidence to show that you're innocent of the death eligibility, correct? Those are two components of the same due process violation. And the reasons they're two components of the same due process violation is because the due process violation encompasses the ways Chapter 64 limits access to the testing. So let me go back there, okay? Slow down. I'm not trying to hurt you. I'm trying to clarify things, okay? Justice Gorsuch asked you why the statement by the TCCA that says even if we spot you, they said, our statute can reach just death eligibility. The record evidence would still make you liable. And you're saying that's not true because the new evidence would show that you are not death eligible, correct? Correct, Your Honor. And what you're saying, I think, is that that issue is the issue that hasn't been looked at by the DA. I see what you're saying, Your Honor. Yes, that's correct. So that if you go back to the DA with this wealth of new evidence, which he hasn't really looked at, and he says to you, even if I spot you the new evidence, it's not convincing for A, B, and C reasons, you might lose, correct? Well, he could certainly say that, and then we would file a Chapter 64 motion. And contravene that, you would have standing to say he's wrong about that. That's right. We would ask the court to determine if we would be eligible for testing with the new evidence.  And so then you would still come back into court, and you could then ask the court for that injunction again. Yes, that's correct. Looking at the new evidence. Yes, exactly. All right. Thank you. Justice Kagan? Justice Gorsuch? Ms. Fisher, sorry to belabor the point, but there's a hypothetical we've been kind of dancing around in a lot of the questions. And that is, let's suppose that the records were entirely clear that the district attorney and the TCCA would have multiple other grounds on which to deny relief, even assuming Article 64, Chapter 64 applied to death eligibility. Would it be redressable then? It depends if those other grounds were wrapped up in the due process violation or not. Let's say they aren't.  Undue delay, for example, wouldn't be wrapped up in anything.  So let's just hypothesize again. There are multiple independent grounds. Redressable? Well, our injury would still be redressable in federal court. How is that? Well, because we wouldn't know if it was for undue delay. No, no. Let's say we know. You're fighting the hypothetical, counsel, a little bit. We know. Let's just hypothesize that right now we would know. There are multiple independent grounds on which your request would be denied that are independent of the thing you're complaining about. Redressable? I'm trying to imagine Your Honor's hypothetical with the undue delay example. It's an example. If that determination were made at the time of the filing of the new motion under the constitutional version, then we would lose at this point. I'm saying we know. Let's say the district attorney in the trial court in Texas has said 17 times, just hypothesize with me, that even if Chapter 64 applied, there's undue delay here, wouldn't be entitled to anyway. End of case. And let's say I have six other independent reasons. Just hypothesize with me. I wouldn't think there would be redressability in that case if we knew those facts to be so. If the independent reasons were not part of the due process violation, then Your Honor would be correct. Thank you. Justice Kavanaugh? A few questions. First, on how long this has been going on and just the history. My understanding is in 2015, for several years, Texas did not oppose the DNA testing. Is that correct? That's correct, Your Honor. Mr. Gutierrez filed a motion with his prior counsel that was entitled Motion for Miscellaneous Relief, where the only thing that we asked for in that motion was DNA testing to basically show he was death ineligible. At that time, District Attorney Sines wrote a two-page response and said that because of how severe and important these issues are, they would not oppose testing. Okay. Second, on the question raised by Justice Thomas, and Justice Sotomayor touched on this, they could have a completely discretionary system. But if you have a system that sets up a right, then they have to have fair procedures. That's Osborne and Skinner, right? Absolutely. Just because a procedure didn't exist, if the state chooses to give that right and there's a liberty interest, then they must provide due process. Yeah. And then third, Justice Barrett's question, which I think the prosecutor is defendant, and this goes back to my first question, that's the awkwardness of Osborne and Skinner. It's very unusual. Reid tried to do the best it could with that without, if Reid went the other way, totally eviscerates Osborne and Skinner, I think. But that leads to some awkward questions about what the prosecutor will do. And I just don't think this is more something to react to. I don't see how we can say something's not redressable just because the prosecutor is going to say, I'm not going to comply with a court order. President Nixon said, I'm not going to turn over the tapes no matter what. He wouldn't say, oh, I guess we don't have standing to hear the executive privilege case. I mean, it just doesn't work, I don't think, to say a recalcitrant defendant can defeat redressability in that way. I assume you agree with that. My reaction is I could not agree with you more, Justice Kavanaugh. On the other grounds, if there are other grounds, those probably go to the merits. But, I mean, that's what we have to figure out here down the road. You could lose down the road because there might not be a procedural due process problem. If there is a procedural due process issue with the statute, you may not win. The DNA testing might not show. We might not. We may not win DNA testing. And then on the DNA testing, just to get to this, on Justice Sotomayor's questions, because I think this is, there is, if Cuellar, Garcia, and Gracia, if I have the names correct, are the people with the blood in the trailer, particularly Cuellar, that's going to be problematic for the state's theory, not defeat it, but problematic or more problematic for the state's theory that Gutierrez was in the trailer, correct? Yes, a fact recognized even by the CCA. And that goes to the fingernail scrapings, the hair on the finger, the blood-stained shirt. Yes. Right? If Gutierrez is nowhere to be found, again, I think that doesn't defeat the state's theory, but that's, it's not inconsistent, but it undermines a little bit how they perceive all this to have transpired in the trailer. It does. And it would be part, and that is why it's part of what we would need to present in a death ineligibility. And what did the state, what was the state's theory at trial about what Cuellar's role was? Well, Cuellar was the initial suspect. If you look at the evidence bags, they all. Right, just on the question, sorry. They believe that he, at trial, what the state argued was that Cuellar was her nephew, and while he was a drunk who was dependent on her and fought with her often, his only role in this was that he found her. The state's theory at trial is that Cuellar was not in the trailer during the crime, correct? Absolutely correct. Okay, and if the blood under the fingernail, if the scrapings and the hair are Cuellar, that's a problem for their theory. Yes, there would be no reason for his DNA to be under her fingernail. Got it. Okay, thank you. Justice Barrett? Okay, I just want to go back to my questions earlier and follow up and clarify, because Justice Kavanaugh makes some good points about the awkwardness of Osborne and Skinner and how this plays out. Because of Skinner and Osborne, when you, you know, Texas has to provide fair procedure, that means that the DA is the defendant in an Article 64 suit like the one that you would file, like the one you did file, saying that this violates procedural due process. He's the correct defendant, is that correct?  So it would give meaning to the right and to your procedural due process claim to have him be the defendant in the Article 64 proceeding and be able to raise that procedural due process claim in the context of that proceeding, right? Yes. Okay. Are you arguing outside, so we are outside of that Article 64 proceeding, obviously, right now. I'm just trying to understand the nature of your argument, because Reed says that the reason why they were standing there, I join Reed, it's substantially likely that the state prosecutor would abide by such a court order. Justice Kavanaugh's point, I agree with that. That there would be a significant increase in the likelihood that the state prosecutor would grant access to the requested evidence. So, to me, that's going to the state prosecutor's discretionary decision whether to hand over the evidence, which might be influenced by application and his understanding of Article 64, right? I would not say it goes to his discretion, Your Honor, because the district attorney in Reed came before this court. Okay. I don't want to talk about the arguments. I want to talk about the case. And are you arguing, let me just phrase it a different way. Are you arguing that it's redressable because of the preclusive effect of the judgment if he went to another proceeding? Is that your basic argument for redressability? Yes, Your Honor. You're sure? Okay. Okay. All right. I'll take that answer. Justice Jackson? So, I guess I was quite surprised at your response to Justice Gorsuch's questions about the independent grounds and the way in which they might deny your redressability claim. And I guess I'm a little bit, no, a lot concerned that that is actually a different conception of redressability than has been historically understood, and at least as I understood it. I thought redressability related to whether the injury could be remedied by court order. That is, whether the court order was the kind of thing that could remedy the injury that is being claimed. But that conception seems to suggest that the question of redressability is whether the court's order will actually remedy this plaintiff's injury. That is, whether there is anything else in the universe that would prevent the plaintiff from getting relief. I have not understood redressability to amount to that. And the real concern, I think, is that it imports into the threshold standing jurisdictional analysis merits discussions about all the defenses and other things that a defendant might be able to raise in the context of a motion to dismiss. So I think that under the hypothetical that Justice Gorsuch posited, if there was a statute of limitations problem, that the defendant could argue that the person had no standing under redressability because they still would not be able to get relief under that concept of redressability. And I had not perceived all of those other things, standing, undue delay, etc., etc., to be issues that the court had to resolve as a matter of their jurisdiction up front in this way. So I'm worried about that. Justice Jackson, I completely agree with your initial understanding. And to the extent that I answered Justice Gorsuch's question to imply otherwise, I did not intend to. The hypothetical of his undue delay, the way- Is an undue delay a merit? I mean, we would fight on the merits. We would litigate whether or not there was undue delay. And if that becomes a standing question, I'm now very confused about the theory that is operating here to determine standing. No, it's not a standing question, and I didn't mean to imply so. The statutory reasons are the focus. You don't have to prove that nothing can come up that will defeat your ability to win the claim. And that's what they seem to be saying. That's exactly what they're saying, and that's what we're fighting against. And to the extent, with no disrespect to Justice Gorsuch, that I answered it in that way, I didn't intend to. Thank you. Thank you, Counsel. Mr. Cole? Thank you, Mr. Chief Justice, and may it please the Court. The district court's declaratory judgment did not redress Mr. Gutierrez's injury, which is the denial of access to DNA testing evidence. Under Reed, the redressability question turns on whether the declaratory judgment would eliminate the state prosecutor's justification for denying the testing and thereby make it significantly increase the likelihood that the prosecutor would hand over the evidence. But here it would not. Unlike in Reed, here there are several independent state law grounds that the prosecutor has relied on to deny access to the evidence, and those grounds are unaffected by the district court's narrow declaratory judgment here. This case may also be moot, and we know that not through supposition or through speculation, but because after Mr. Gutierrez obtained that judgment, he took it to state court and tried to use it as a basis to compel district attorney Sines to hand over the evidence. But because of those independent state law grounds grounded in Chapter 64, he refused, and the Court of Criminal Appeals upheld that decision for a third time. That means the declaratory judgment will not and did not redress his injury. Gutierrez responds by first redefining the scope of his injury in fact and then attempting to refashion the scope of the district court's narrow declaratory judgment, but neither can establish jurisdiction. From his operative complaint right through his opening merits brief in this court, Mr. Gutierrez has consistently defined his injury as the denial of access to DNA testing, and his attempt in reply to refashion the scope of the district court's declaratory judgment is contrary to the letter of that judgment at JA-61A, and the CCA has already rejected that. Because the court lacks jurisdiction twice over, it should affirm, and I welcome the court's questions. Let's say there are multiple justifications for not providing the DNA testing, and the declaratory judgment eliminates several of those. Wouldn't it make it more likely that the testing would be available? The question, Justice Thomas, is whether it would get him access to the evidence, because the injury he's asserted here and has continued to assert is denial of access to the evidence. And under state law, there are several statutory grounds he has to jump through to get them. So if you eliminate a couple, but some still remain, then, no, it would not redress the injury, which, again, is the denial. I think that that was true in Reed's, too. I mean, if you just look at page 233, which is the page before the critical paragraph in Reed, it talks about how the court reasoned in denying Reed's motion, and then it says that there were two reasons. One was that there wasn't this adequate chain of custody, and the second was that Reed didn't demonstrate that he would have been acquitted if the DNA results were exculpatory. And essentially that functioned in the exact same way. In other words, it's like even if the specific claim that Reed is making were knocked off the table, we have a backup way to defeat his request for evidence. And the court obviously thought that that was irrelevant, because, you know, a page later, the court makes no reference to that in explaining why it is that Reed has stand-in. So here's why I think this case is just not Reed, Justice Kagan. First, Reed, of course, was a pleading stage challenge. He actually, at that point, as you rightly point out, had several live challenges to various grounds under the statute. In fact, at that point, he may well have prevailed on those grounds and thereby eliminated the justification. In fact, those grounds are currently pending live before the Fifth Circuit. Yeah, it's the same thing as, you know, I think Justice Gorsuch called it, there's a kind of harmlessness backup. And so, too, there was in Reed, as the court noted. The difference, though, Justice Kagan, is in Reed. Mr. Reed was challenging all the justifications here. Mr. Gutierrez is simply not. He has not challenged in his complaint several of the independent statements. I think that that's a pretty nitpicking way to read this complaint. And I think that Ms. Fisher talked about this when she was up there. I mean, you can go through and you can pick the, you know, oh, he's really challenging the sentence versus conviction point. But at a deeper level, he's challenging the whole realm of procedures that prevents him from getting access to DNA testing. And it's most clear, I'm going to tell you, in paragraph 81, if I can find it, because he says, by refusing to release the biological evidence for testing, you've deprived Gutierrez of his liberty interests and using state procedures to obtain a reduction of his sentence in violation of his right to due process of law. So that says to me that there is, if you read the complaint with any degree of generosity, there's just a claim here that a set of procedures that would deprive this man in these circumstances of DNA evidence is a set of procedures that's violative of due process. Well, with respect, Justice Kagan, that is not how I read the complaint. That's not how the district court read the complaint. I mean, there's a reason the district court looked at the two grounds he alleged. The one ground was a challenge to the preponderance of the evidence standard, which is too high. The second ground was this sentence versus conviction distinction. There are certainly these specific things. I don't mean to say for a moment that there aren't those specific things addressed in his complaint. But there's also a kind of more general argument, which is like, wow, you put all these procedures together, where in the world, and they somehow manage to deprive this person of DNA testing? That's violative of due process. And, you know, it's very similar to what I'm saying. You've heard the argument before, because it's very similar to Judge Higginson's argument below, where Judge Higginson is saying, you know, Reed did not, like, pick apart every aspect of the complaint and say exactly how this aspect related to this Texas Court of Criminal Appeals holding. I mean, if it had done what you're suggesting, it probably would have reached a different answer. It didn't do that. Well, two responses, Justice Kagan. The first is that in Reed, that was a complaint. You're quite right to say so. Here, it's final judgment. So we know the scope of his claims. The other thing is, again, in Reed, those claims were live. They're still live today, in fact. So there's a chance that the declaratory judgment would, in fact, redress his injury and get him the evidence. Here, I just don't read the complaint in the same way as you perhaps. Go ahead. Will you please explain to me how the process works in the DA's office when there is a request for DNA evidence made? Sure. So there's two ways. And I think Justice Thomas' dissent points this out in Reed. There's two ways. There's the Chapter 64 way. Right. You go and get a court to force them. And then there can be essentially a species of prosecutorial discretion. There could be an agreement to give up the evidence. And I want to be very careful about this because I think there was some mixing and matching at the top side argument. The discretionary component is just simply not at issue here. His complaint is very clearly putting at issue Chapter 64, the procedures. And this court has said. I guess my question is, I understand all that. My question is, understanding that Article 64 doesn't bind the prosecutor's exercise of discretion, I mean, surely it would make sense for the prosecutor to have an eye towards Article 64, knowing that that's the next step, right? And so to be making some sort of judgments about whether Article 64 would permit access to the evidence or not. So what I'm asking is, what does the prosecutor take into account? What is the policy? Is Article 64 in the background as part of the policy? Yes. The prosecutor considers Article 64, as the court put it in Osborne, it's the state legislature who really is the primary determinant of the grounds under which a convict might be entitled to DNA testing. But again. And here, didn't the prosecutors rely on Article 64 in denying this? I mean, didn't you say Article 64 is one of the reasons? Those are the, to put it in the terms of Reed, those are the justifications. In the discretion, just let me finish this line, but in the discretionary phase is what we're talking about, right? So Justice Jackson just said that was a reason that the DA denied access to the evidence on track prosecutor, not track court. So there's no evidence in the record about that discretionary phase because, again, that is just not an issue here. It's not put at issue in the complaint. He's not saying it's a procedural due process violation for the prosecutor to exercise or not discretion. This is wholly bound up in Chapter 64. And you can see that throughout his complaint. And the most evident pages are paragraphs 79 through 81. So what did the prosecutor consider in denying the evidence? Well, we have the justifications because we've had them since 2011.  We have, again, we have the identity factor, which the Court of Criminal Appeals ruled against him. We have the delay factor. And we have the alternative conclusion. So those are looking towards 64? Those are in 64, yes. Again, because that's what he's challenging in this case. Right, but just to be clear, you're saying, you're not talking, I don't want to talk about track court. I just want to talk about track prosecutor. And what you're saying is that we have evidence of what the prosecutor, the reason why the prosecutor denied access to the evidence. The evidence in the context of Chapter 64, yes, those are the reasons that have been argued. Okay, but are you talking about track court or track prosecutor? So if track prosecutor means the internal deliberations in the office, of course there's no evidence of that because it's not relevant to this case. He's not challenging the discretion. I have a question because, if I might try to clarify this, there's always a discretion of a prosecutor to do this, and sometimes it happens outside of formal process. But when I'm, you're, am I taking you to be saying that under Article 64, if, don't argue that they haven't, if they met all of the prerequisites, would you have a right to say no to the court? I'm not going to give the evidence. Of course not, Justice Sotomayor. If the convicting court orders the evidence, of course we would abide by that. So if they met Article 64, you would feel bound to follow it, correct? Oh, of course. All right. I think you're misunderstanding, Justice Sotomayor. You might be. Not if the court orders it. Obviously the DA is going to comply with a court order. If the DA concluded, yeah, you know, you satisfy everything about Article 64, and if we went to court, in my judgment, it's pretty evident that the trial court would give you the evidence. In that instance, would you turn over the evidence? I suspect so. I mean, that's not at issue. If I understand it, though, Chapter 64 has a lot of things in it, right? Yes, Your Honor. The one thing that's been challenged is whether it applies to the death penalty stage. Quite right, Justice Garland. All right. And so getting past that hurdle, you still have the other independent grounds. They're in Chapter 64 too. Quite right. All right, and so I just want to make sure I understand the nature of what you're saying. You're saying an independent prosecutor making his or her own decision would take into account, of course, if the court were to hold that it applies to death penalty proceedings, he'd abide by that, but he'd still have independent grounds that have been litigated and resolved upon which to deny the request. That's correct in this case. Of course. I want to be clear about this. This prosecutor is a public official. He follows state and federal court orders.  Mr. Garland, can I ask you, because I'm just trying to understand the theory of redressability here, because I think I have a different concept, and I'm just wanting to make sure that I understand yours. Why isn't it enough for redressability purposes that a declaratory judgment would eliminate some of the justifications that a prosecutor has set forward as the reason why he denied the evidence? I mean, traditionally, traditionally, I would think, the way I conceive of redressability, you might have an argument if the declaratory judgment didn't eliminate any of them. We'd be sort of ships passing in the night. The prosecutor says, here are my justifications to include this aspect of Article 64 or whatever, and the person is asking for a declaratory judgment that doesn't speak to that at all. Fine. You might say, no redressability. But what you seem to be saying here is, no, we could have a declaratory judgment that speaks to some of the justifications that the prosecutor has put forward for denying the evidence, but unless we have a situation in which there is no other justification that could possibly support this, you have no redressability. And I don't understand that piece of it. So here's why, Justice Jackson. It turns on the injury he's asserting. The injury he's asserting is denial of the access to the evidence. That's binary. But that's not the way he is, at least in the briefing, articulated. I thought the injury was consideration of his access to the evidence using an unconstitutional process. That is his constitutional claim. But his injury, and I would direct you to Paragraph 81 of his operative complaint at Joint Appendix 457A, I think this nicely lays that out because he says at the beginning, by refusing to release the biological evidence for testing. So that's the conduct of the defendant that he wants to remedy. Yeah, but in a discretionary world, if that's your concept of injury, you would never have redressability because the prosecutor could always save the very narrow circumstance in which the court, I guess, orders them to do that very thing. They could always say, well, I wouldn't give it to you anyway, no matter what. So this isn't about discretion. And let me go to the redressability component specifically within declaratory judgments. This court said in Brackeen that what saves declaratory judgments from the advisory opinion problem is that they are afforded preclusive effect in later imminent litigation. So really, the redress he needs through this is that the declaratory judgment will be afforded. Yes, but Brackeen was talking about parties versus non-parties. I guess what I'm really, really worried about is that this case, which seems very small and narrow and about a particular guy and DNA testing and the interpretation of the statute could actually have major implications for how we understand standing because redressability, which has traditionally not been where all the action is in terms of our standing analysis, it has not been a major hurdle for the court to have to get over, under your view comes out to be a situation in which the court has to essentially decide all these other issues about whether or not the person could ever get relief in order to determine whether or not this claim is redressable. I don't think so, Justice Jackson, and here's why. This goes not to some sort of discretion. This is not like we're saying the district attorney, this case concerns the district attorney, pulling ideas out of thin air. Again, in the context of the Chapter 64 proceeding. Let me just ask you this hypothetical. If there was a statute of limitations problem, could that be used by the defendant in this circumstance, the state attorney, to argue no redressability? A federal statute of limitations? No, because that wouldn't be a state law justification. No, I mean a state law justification. Okay, if the state has a statute of limitations, and that's the problem, or one of the problems, he includes statute of limitations as a part of the list of things as to why this person is not going to get the testing. Are you saying that that statute of limitations question could be imported into the standing analysis as a grounds for lack of redressability? So in Reed, if it is a justification, and again, the declaratory judgment has to eliminate the justification. I understand. Then yes. If that was a state law ground that is a justification. So any other state law ground that would preclude this person from getting the relief they're seeking becomes a redressability issue under your theory. So there's a finite set of facts here. This is not like they're going to be coming out of nowhere. It's in the statute. It's in the common law. Again, this is Chapter 64. So it's not like he's going to be coming up with a bunch of obscure. No, but in my hypothetical, I'm just talking about theory. You're setting up redressability to require the exclusion of any other ground for relief. So I'm just testing that by saying any other ground for relief under your theory would count as a redressability problem. Because the injury that must be redressed in this case is the denial of evidence. Again, it's binary. He has to get the evidence or not. I'm just going to push on that. I mean, I think some of your answers are really collapsing the merits into redressability, so I think that's a concern. But I understood the complaint and the thrust of the argument to be the denial of fair procedures with respect to the underlying right. And we've long said, I mean, Justice Scalia's opinion in Lujan, if this case is about fair procedures, Justice Scalia's opinion in Lujan said there's much truth to the assertion that procedural rights are special. The person who has been accorded a procedural right to protect his concrete interests can assert that right without meeting all the normal standards for redressability and immediacy. And I think procedural rights have always been different because if you could just say, well, who cares about the procedures, they're not going to win anyway, you're not going to be able to get into court to argue for the fair procedures. And that seems to be on point here. Tell me why it's not. So I don't think so, Justice Kavanaugh, for this reason. He is not asserting a procedural injury here. J.A. 430-A, J.A. 432-A, J.A. 452-A, J.A. 453-A, that is his complaint. You've said over and over again, I've read the complaint, you've said over and over again that he's complaining about the denial of access to the evidence. That is the ultimate goal, obviously. But the complaint is that Chapter 64, as interpreted, is unconstitutional in a violation of procedural due process to the extent it only allows you to challenge your conviction for the underlying crime and not your ineligibility for the death penalty. The argument is that that violates procedural due process. That may be a winning argument, it may be a losing argument, but that's a down-the-road argument, it strikes me, but that's the challenge. So that seems to me to be his theory of why the Constitution is violated. But when you go to the injury, when you're asking, what's the defendant's conduct here? Or you always, this is again in the same footnote in Justice Scalia's opinion, the whole opinion, you always have a connected, substantive interest at the end to stop the project, for example, in the environmental case. But your argument is that they didn't comply with the procedures in order to stop the project. And you can't come in and say, oh, the project's going forward anyway, so who cares about the procedures, you don't get redressability. And that's just a stone-cold loser, as Justice Scalia said. Well, again, I don't think his injury is the procedural point. I just don't view this as a procedural injury case in the same way that, say, an APA case would, when there's a right to notice and comment or something like that. Again, I would just go back to his complaint and his theory is always there. Can I ask one more question, just to make sure? And I don't think you're arguing this, but I just want to make sure. Are you arguing that if you said we will never turn over the DNA evidence, that that declaration by you, the defendant, would defeat redressability? No, of course not, because, again, the question is whether the declaratory judgment could then be taken into state court and accorded preclusive effect to the court. Again, the court here under Chapter 64 is the one who would order that, and so obviously we would abide by the court's order. Are you saying if we say we will never comply absent a future court order, that that defeats redressability now for this kind of suit? Are you arguing that? I guess I'm not sure of the context. You're saying if he just makes a declaration that— Yeah, we will never exercise our discretion to turn it over absent a court order. We will never do it absent a court order down the road, but there is no court order yet, so therefore you federal court right now do not—it's not a redressable case. So I think the distinction here is that— I think you are arguing that. But the distinction here is not challenging discretion. So this is not a case about whether the district attorney exercises discretion or not. This is purely a question under Chapter 64 whether he can be compelled to hand over the evidence, again, through the preclusive effects of the declaration. That's a fair—I mean, the discretion is a fair point. It's the oddity or awkwardness of the prosecutors.  I'll stop there. Counsel, maybe this is an unfair question to you. You can push back, okay? We've now spent so much time on whether you should test or not, and at one point you decided that you wouldn't object to doing it, but now you're fighting a tooth and nail. It seems odd to be fighting a tooth and nail when they have more evidence about the potential culpability of Mr. Quaylaw, including that he failed the polygraph. That was an affirmative misstatement earlier in the case that he had passed it. They now have evidence that he had money or was tied to money, which seems that somehow we're fighting a legal issue that really is less legal than it is— don't you want to know you're convicting the right person for the right thing? I mean, he's going to spend time in jail no matter what because he admits to being at least an accessory to the robbery or a part of the robbery, but at what point does this legal maneuvering become counterproductive to the state? If you are sure of your conviction and your theory, why not do the testing? So a couple of responses, Justice Sotomayor. The first is that, again, the Texas legislature has set the requirements for DNA testing. But you told me earlier that there's always prosecutorial discretion outside of Article 64. I'm not in Article 64. I'm in at what point do you exercise your discretion? Because you have it. So a couple of responses. So first, they've presented some of this evidence already to the CCA in a successive habeas petition, which was rejected. And part of their due process argument is that the court is limiting itself to the record evidence and not looking at what was developed later and that that's a part of the due process. And if I might address that piece, I think that is important. They have not challenged that record facts requirement. Other plaintiffs have. Mr. Reed is challenging that currently. Well, they could go back to the district court under Rule 60B and argue that you're still not abiding by due process and they should reopen. So they could do that. It's hard to see how that would redress the injury because, again, they did not prevail on final judgment on their challenge to the preponderance of the evidence. Well, now that you know that they can challenge the death penalty and that means that they could prove they were actually innocent of the death penalty, that might have been a new circumstance to justify them going back to the district court and saying, look, they're doing what we told you they were doing. They're relying on only trial record evidence, but that's a violation of due process. They should look at the new evidence, too. Well, they just haven't said that. I suppose they could in the future, but that doesn't mean they can redress the injury. Well, but the point is that it's only a possibility, but that's all they need to have standing. Let me go to your main thrust of your argument, your question, though, so we don't get sidetracked on that. Mr. Gutierrez had the opportunity to do testing at the beginning of trial. It was made available to him, and the Court of Criminal Appeals said he made a strategic choice not to test the evidence. You point to the 2015 period where there was this three-year period where – and this is at – I would direct you to J.A. What he did at trial was already present in 2015, and the prosecutor agreed to test that. And he did not take advantage of that there. But the other thing is the Court of Criminal Appeals, as Justice Gorsuch was pointing at the topside argument, is that they've already said that even if the evidence were exculpatory, it would not change his sentence because, again, his statement puts him in the room. That's if they believe he's been complaining that that statement that put him in the room was coerced. And no court – He had two or three statements before that, and each of them he was only an accessory to the robbery. And no court in the country has ever accepted that theory. In fact, the trial court at the pre-suppression hearing had an evidentiary hearing where she had Mr. Gutierrez and she had the officer, and – But if they have Qualar being more the actor, it might change that calculus. I don't see how it would unsettle the finding that this was a voluntary confession. I mean, again, the baseline, the best he's got is that he was there, and he was watching his friend stab Ms. Harrison while he was robbing her. That's the baseline. You ask, I think, at the top side, would Qualar's DNA be there? But as Justice Alito pointed out, he was living there. He was the nephew. His DNA is probably there. But if it was under her fingernails and that was his hair, that would be a very different case. Well, if it was his hair, it wouldn't be very surprising because he found her, and he was apparently very drunk when he found her, and so was not very careful. He was touching the body. He got blood all over him. The main point, though, is the Court of Criminal Appeals has three times already held, even if you assume the evidence he wanted to test, which, again, this is a DNA testing case, even if you would assume it's exculpatory, it would not change the sentence because he is eligible for the death penalty under Edmund Tyson. Mr. Cole, when we assess redressability in procedural due process cases, Justice Kavanaugh is absolutely right that that's a different animal. Why isn't this a procedural due process claim that the procedures that the TCCA used were unfair? I mean, I understand your point is it's not a procedural claim. It's a substantive one. He wants access to this evidence. But you've heard some points in the complaint pointed out, paragraph 81, for example, and I just want to get your reactions. Yeah, I'd be happy to, Justice Gorsuch. So I understand him to say I'm not able to access the habeas right under 11.071. That seems to me to be collapsing the things that this court decoupled in Skinner. Justice Ginsburg's opinion for the court says, no, no, no, we only focus on the Article 64 procedures. We separate out the habeas issue so that we avoid the heck bar. So if he's complaining about his access to the state, the access to state habeas, that's just, I think, a separate issue. No, no, no. I mean, I think that the question is why don't you, a fair reading of this complaint, is you look at the body of procedures that are in Chapter 64, and they're preventing me from getting testing at this moment in time. And so that is essentially a procedural claim. I mean, of course he wants the testing. All complaints about procedures are because he wants something that the procedures are going to lead to. But in paragraph 81 and other places, it's really clear. It's like the body of procedures here, and he mentions some of them specifically. The body of procedures here are preventing me from getting testing. That's a violation of due process. So I think he does have to identify those procedures, though. And he's only identified a couple of them. That's the main problem. He has not challenged all the procedures that he needs to to get the remedy for the injury. Other plaintiffs may well have done that, and some, including Mr. Reed, are challenging those today. It's just I think some of the idiosyncratic choices of this particular litigant in this case. That's what I want to get at, though. I mean, it's one thing to say, I don't know whether I'm entitled to it or not, but I didn't get a fair day in court. Got it. Another thing to say, I'm entitled to this evidence. Okay, those are two different injuries. What's your best evidence that this case, this complaint, should be read in the second category? Well, again, I would go back to several sites that I read off earlier from his complaint, where he says he was requesting an order declaring that defendant's withholding of the evidence. Again, it's all about access to the evidence, JA-430, JA-432A, JA-452, 453, 457. It's all over his complaint. That is what he's alleging. What about 456, asserting that, at least according to counsel on the other side's representation, he was asserting that the CCA's construction of Chapter 64 prevents Gutierrez from establishing that he's ineligible for the death penalty? Yeah, I think that's the conviction versus sentence distinction that he's alleging. That's his theory about why it's unconstitutional. But his injury is, again, denial of access to the evidence. Thank you, counsel. Justice Thomas, anything further? Just so it's clear, how does the Chapter 64 proceeding work? How does it begin and who adjudicates it? So the defendant would file or the convict would file a motion in state court and it would go before the convicting court who would then adjudicate it, and then there's a direct right of appeal directly to the CCA. So the oddity here is that we are not dealing with a direct appeal of a denial from the TCCA. That's right, and he could have done that. He could have filed a cert petition under 28 U.S.C. 1257A. Now, how does the discretionary process work? I think it's not relevant here. I understand that, but how would it normally work? Well, I suppose the convict might go to the DA, and his lawyers would go to the DA and ask for turnover of the evidence, and it would just be informal like that. I mean, it's essentially a prosecutorial discretion issue. It might vary from DA office to DA office because it is a measure of prosecutorial discretion. Justice Alito? I take Reid at face value, and I understand Reid to say that there was redressability there because there was a chance that a decision would lead the district attorney to turn over the DNA evidence. Is that correct? That's how I understand it, Justice Alito, yes. All right, so here the district attorney is the defendant, and there are multiple grounds on which the district attorney could refuse to turn over the evidence. The district attorney could say, I think that the distinction between using the evidence to prove lack of guilt and using the evidence to prove death eligibility is sound. All right, that would be affected by the declaratory judgment that's sought. But there are other grounds that were mentioned by the Court of Criminal Appeals and by the trial level court. And I take it, the district attorney is here. The district attorney could turn over this evidence. The district attorney is resisting it and citing to us the reasons that were given by the Texas courts why the evidence doesn't have to be turned over under Article 64. It's really hard for me to see for that reason how a decision on this distinction between death eligibility and guilt could make a difference in the district attorney's decision. I agree with you, Justice Alito, and we already know how it would turn out because he took the declaratory judgment to state court, the one that he got and the most relief he could get, and he still was unable to get the redress. We're not concerned here about the question of what good the DNA evidence might do, but some of my colleagues have gone into that in some depth. So a couple of things would be helpful to me just in my understanding of the case to have clarification on a couple of things. The state's theory was that there were three people involved here, right? Three people in the overall scheme. In the overall scheme. And where did that come from? That came from, did it come from any place other than Mr. Gutierrez's confession? It was his confession. There was also, these weren't entered in trial, but they came in in the Article 64. But as far as the evidence of trial was concerned, the idea that there were only three people came from Mr. Gutierrez himself. That's right. So establishing that more than three people were involved in some way in this would only affect the portion of Mr. Gutierrez's confession that said that only three people were involved. Yes. Okay, thank you. Justice O'Connor? Justice Kagan? I want to make sure, Mr. Cole, I understand your distinction of Reed. And as you said it to Justice Alito, it is that there is this backup argument that even if the evidence were exculpatory, it's not going to avail him anything. And we went over this before, but I want to make sure I understand it because Reed had the identical backup argument, right? There's first the argument about chain of custody, but then the state trial court had said, look, he just didn't demonstrate that he would have been acquitted even if the DNA results were exculpatory. And the court clearly did not care about that, that there was a backup argument that could have done all the work in the same way that you're saying your backup argument could do all the work. So what are we to make of that? Did we just forget about it between page 233 and 234? No, it's not what I'm suggesting, Justice Kagan. Here's where I think the distinction lies. Mr. Reed was challenging in his complaint all of the justifications, and a declaratory judgment may well have eliminated it. And so I think the court rightly said, yeah, it would eliminate those justifications. The difference here is Mr. Gutierrez has not done that. I'm not sure I do understand that because if you looked at Reed's complaint, it was really, I thought, pretty similar to this in the sense of and the court says this in the next paragraph, it says, you know, what Reed argued primarily was that the law's stringent chain of custody requirement was unconstitutional in the same way that what Mr. Gutierrez is arguing primarily is that Chapter 64 is unconstitutional because it doesn't apply to sentencing. So there is a primary argument that focuses on one procedure, but there's also a sort of broad claim that if at this point in these circumstances for this person, the Chapter 64 procedures are preventing him from getting testing, that's a violation of due process. So I guess probably the minor disagreement we're having is how broadly you construe his claim. It seems to me that all the courts in this case have construed it. You have to eliminate the justifications. And there are independent justifications. The statute is conjunctive. And when you marry that up with his injury, which is... Yeah, but then Reed loses too, if that's the case. I don't think so because it was at the pleading stage. And again, he was challenging all of the justifications. Mr. Gutierrez has not challenged all the justifications. And that is the difference because you have to challenge all the justifications to get access to the evidence. Thank you. Justice Gorsuch, just to have it on? Just a couple. You mentioned that the declaratory judgment was taken to the state court and didn't affect the state court's decision. But hadn't the declaratory judgment been vacated by the Fifth Circuit by the time that happened? It had, but that was not a factor in the court's decision at all. That's a key point, though. In 2015, when the state said we're okay with the DNA testing, what happened? I'm a little murky on that. It sounds like the state trial court just didn't act for quite a while. Yeah, so the record's a little spotty about that, but here's what it appears to me it happened. There was this motion for miscellaneous relief, which may well have been a procedurally improper motion. But setting that aside, it appears that... Well, it might have been procedurally improper, but the state said we're okay with the DNA testing, correct? Well, so I would direct you to JA 731 to 732. The state said we're not going to agree to it, but we're not going to oppose it. And then it appears that it just never got adjudicated for whatever reason. The record doesn't say why.  And then that's it. Thank you. Justice Barrett? Justice Jackson? Let me just be clear on the bottom line from sort of a bird's-eye view here. I understand your argument to be that as a plaintiff, you have to propose an order that would eliminate all of the justifications for the denial in order to have standing to challenge any one of them. Is that right? To remedy your injury, which is the denial of access to the evidence, you have to eliminate those justifications. Would you concede that if the plaintiff stated the injury in a more granular way, if they said the injury was to... The injury here was that Chapter 64 is procedurally infirm and it is preventing me from establishing what I need to establish in order to get this relief. If that's the statement of the injury, what results? Well, I'm not sure how that would be the injury, because, again, they need to identify what's the conduct of the defendant there. No, the injury is we have this provision of law that is preventing me from being able to make my claim. You're saying that can't be an injury? What I'm saying is that it has to be conduct of the defendant. I mean, we need redress against a particular defendant, and so what I'm saying is what is the defendant's conduct? To the extent that the defendant is relying on that provision of law to ultimately deny me relief, what I'm saying is I see you, defendant, relying on this provision of law, but that provision of law has a procedural due process problem. But what is the end result of the lawsuit is what I'm getting at. Again, if he wants access to the evidence, which is basically what a Skinner claim is... It just seems so complicated to me. In a world where standing theory is typically pretty clear. I mean, we fight about whether or not this thing is an actual injury. We fight about the extent that the defendant caused it. You're not claiming any of that. You're sort of focusing in on this sleeper area of standing law that is in a way that's very odd to me. Well, we're just trying to be faithful to Reed, and as I read the Reed case, it says it establishes a clear test. It says it has to eliminate... So you agree that you're reading Reed to establish a new test. The test is that you have to eliminate all other avenues of relief. That's what Reed said, and so we take that at face value. I'm not sure that's... Thank you. Thank you, counsel. Rebuttal, Ms. Fisher? Thank you, Your Honor. Very briefly, Mr. Gutierrez has never changed his theory that this is a procedural injury and that it's the denial of access to DNA evidence to use in a 5A3. That's clear throughout his complaint. What has changed is the respondent's reason why he doesn't have standing. And so these new issues that came up, like the point of the in the alternative holding, was raised for the first time by respondents in their 28J letter in the Fifth Circuit after all the briefing has been completed, and they raised these two new supposedly independent grounds in their merits brief for the very first time. Now, they're allowed to do that because it's a jurisdictional argument, but it's not Mr. Gutierrez who keeps switching his position. We are simply reacting to the brand-new arguments that respondents have come up with late in the process as to why we don't have standing. None of these arguments were mentioned in the district court, in response to our complaint, or in our Fifth Circuit briefing. My second point is simply that the Fifth Circuit itself said that they went beyond Reed. When you look at footnote 3, it said it gives us pause that we are doing, and I'm going to paraphrase a little bit here, but it gives us pause that we are going beyond what this court did in Reed. If you follow that new rule that the Fifth Circuit imposed and basically force a plaintiff to prove that they're going to win the case just to show that it's redressable, that would turn Article III standing on its head. And with that, I rest and thank the court. Thank you, counsel. The case is submitted.